UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM GREG THOMAS,

                Petitioner,

vs.                                Case No. 3:03-cv-237-J-32

JAMES R. MCDONOUGH,
et al.,

                Respondents.

_____

FLOYD DAMREN,

                Petitioner,

vs.                                Case No. 3:03-cv-397-J-32

JAMES R. MCDONOUGH,
et al.,

                Respondents.

_____

## ORDER OF DISMISSAL WITH PREJUDICE

### Preface

Before the Court are three capital cases which all present the same troubling question:  when counsel appointed by this very Court to represent capital habeas petitioners fail to file the habeas petitions on time, does the petitioner have any remedy?[1]  Based on my reading of current Eleventh Circuit precedent, the answer is no. In this opinion I so rule.  However, because of the importance of

---

[1] The following opinion only addresses two of the three cases because the third case, Asay v. McDonough, is delayed by pending proceedings in the Supreme Court of Florida.  Ironically, Asay is arguably the most egregious of this trilogy because, there, the Petitioner Asay actually was aware of the federal limitations deadline and implored his attorney to file the petition timely, all to no avail.

this issue, not only to the affected petitioners, but to this Court as well, I think it appropriate to share some thoughts.

First, I have no idea whether any of these petitioners have meritorious federal habeas claims. Because the petitioners are not asserting actual innocence and because I have found the claims time-barred, I have not looked at the merits. Certainly, the state courts in each case have concluded, after painstaking review, that the death sentences are proper. But, the law provides for federal habeas review in capital cases and this Court is therefore obliged to provide due and proper process to these petitioners.

Second, at least in this part of Florida, there appears to be a tremendous shortage of attorneys who will admit to being experts in federal habeas procedures and who will agree to be appointed to these cases. Most often, whomever represented petitioners in the state collateral proceedings will agree, sometimes reluctantly, to handle the federal work even if not well-versed in the federal habeas statute and limitations period.

Third, the one-year federal limitations period is, as in these cases, often fairly close to running immediately upon the completion of state post conviction proceedings, putting pressure on post conviction counsel to file a timely federal petition.

Fourth, in these cases, the Court agreed to appoint these counsel, at their request, upon what the Court at the time thought was a sufficient showing of expertise to be able to properly

prosecute the cases.  Obviously, if the Court had known then that these counsel would (or in one case already had) miss the federal limitations deadline, it would not have appointed them (assuming the Court had any other option available).

Fifth, counsel in these cases really have no good reason or explanation for their failure to file on time.  I suppose both counsel should be commended on the one hand for stepping into the breach of capital litigation, where relatively few lawyers will tread.  But having said that, it is hard for me to fathom how a lawyer who asked for and received the appointment of this Court, could abdicate the most basic function of filing the petition on time, even if it is "bare-bones."

Sixth, while acknowledging that Eleventh Circuit precedent places responsibility for timeliness on the petitioner himself, there are real practical concerns.  If capital petitioners were able to navigate the shoals of federal habeas litigation without assistance, there would be no need to appoint counsel in the first place.  Yet, federal law provides for appointment and payment of counsel in federal habeas capital cases, thereby acknowledging the necessity of such counsel.  See 28 U.S.C. § 3599(a)(2).  Moreover, once counsel is appointed, a petitioner should be able to rely on that counsel to, if nothing else, file his petition on time. Finally, this Court's procedures mandate that once counsel is appointed, the petitioner may only file pleadings through counsel.

Indeed, the Court routinely strikes and returns <u>pro</u> <u>se</u> filings of parties who are represented by counsel.  So, even a savvy petitioner, who may see the clock running out on his habeas time, can only cajole (and in one case plead with) his counsel to file the petition timely.

I recognize the sound legal and policy reasons which underpin the Eleventh Circuit's decisions on this issue and, even if I did not, I am no less bound by them.  Nevertheless, I would be remiss if I did not share my deep concern that in these cases our federal system of justice fell short in the very situation where the stakes could not be higher.

## I. Status

These capital cases are before the Court on Petitioners' Request for Consolidated Oral Argument and Motion to Consolidate Records.[2]  This Court finds that the Request for Consolidated Oral Argument should be denied since an oral argument was previously conducted addressing the one-year limitation period and equitable tolling issues.  Further, this Court will construe the Motion to Consolidate Records as a Motion to Consolidate Cases, which will be

---

[2] Another capital case was included in the motions, <u>Asay v. McDonough</u>, Case No. 3:05-cv-147-J-32; however, because there is pending action in the Supreme Court of Florida, *i.e.*, Appellant's Motion to Issue Mandate, the <u>Asay</u> case will be excluded from this opinion and addressed separately.

granted pursuant to Fed. R. Civ. P. 42(a)[3], with respect to Case Nos. 3:03-cv-237-J-32 and 3:03-cv-397-J-32, for the limited purpose of addressing the one-year limitation issue.[4] Thus, although there are different parties and different facts involved in these actions, these cases have common questions of law with respect to the one-year limitation issue. Further, Rule 42(a) "should be used to . . . eliminate unnecessary repetition and confusion." Miller v. U.S. Postal Service, 729 F.2d 1033, 1036 (5th Cir. 1984) (citation omitted). The timeliness of each petition, however, will be evaluated independently.

## II. History

These cases contain common issues of whether the petitions were timely filed in this Court and, if not, whether equitable tolling applies to render them timely. An oral argument was conducted on January 18, 2006, addressing the one-year limitation period and equitable tolling issues. Thereafter, on February 27,

---

[3] Rule 42(a) of the Federal Rules of Civil Procedure states:

> **Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

[4] The Motion to Consolidate Records, construed as a Motion to Consolidate Cases, will be denied with respect to Case No. 3:05-cv-147-J-32 for the previously-stated reason. See Section I. at 1 n.2.

2006, the Court appointed John S. Mills, Esquire, as Petitioner's co-counsel in both cases for the limited purpose of addressing the timeliness and equitable tolling issues because some of the grounds upon which equitable tolling arguments might be based implicated Petitioner's previously appointed counsels' own conduct. Mr. Mills was ordered to file supplemental responses to Respondents' assertion of untimeliness, addressing timeliness under 28 U.S.C. § 2244(d) and equitable tolling, including attorney conduct. Further, Respondents were ordered to respond to the supplemental responses.

### III. The Law

There is a one-year statute of limitation on federal habeas actions as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was

6

initially recognized by the Supreme
Court, if the right has been newly
recognized by the Supreme Court and
made retroactively applicable to
cases on collateral review; or

(D) the date on which the factual
predicate of the claim or claims
presented could have been discovered
through the exercise of due
diligence.

(2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the
pertinent judgment or claim is pending shall
not be counted toward any period of limitation
under this subsection.

28 U.S.C. § 2244(d).

The Eleventh Circuit recently set forth the governing law on

equitable tolling of this limitation period.

"It is by now clear in this Circuit that
'[e]quitable tolling can be applied to prevent
the application of the AEDPA's statutory
deadline when "extraordinary circumstances"
have worked to prevent an otherwise diligent
petitioner from timely filing his petition.'"
*Drew*, 297 F.3d at 1286 (quoting *Helton v.
Sec'y for the Dep't of Corr.*, 259 F.3d 1310,
1312 (11th Cir. 2001)). "Equitable tolling is
an extraordinary remedy which is typically
applied sparingly." *Steed v. Head*, 219 F.3d
1298, 1300 (11th Cir. 2000). "In order to be
entitled to the benefit of equitable tolling,
a petitioner must act with diligence, and the
untimeliness of the filing must be the result
of circumstances beyond his control." *Drew*,
297 F.3d at 1286-87. The petitioner is
charged with the burden of establishing that
equitable tolling should apply. *Id.* at 1286;
*Helton*, 259 F.3d at 1313-14.

Not belying its status as an
extraordinary remedy, "this Court has rejected

7

> most claims for equitable tolling." *Diaz v. Sec'y for the Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004). For example, we have held that "[a]n attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling," *Steed*, 219 F.3d at 1300; *see also Helton*, 259 F.3d at 1313 (holding that an attorney's miscalculation or misinterpretation does not constitute extraordinary circumstances), and that an attorney's negligence was not a ground for equitable tolling where the petitioner's habeas petition was filed outside of the AEDPA statute of limitations because his attorney used ordinary mail service. *Sandvik v. United States*, 177 F.3d 1269, 1271-72 (11th Cir. 1999). These circumstances were not "extraordinary" because the ultimate failure to file within the statutory period was a direct result of decisions made and actions taken by the petitioner or his attorney. Having created the situations that caused their petitions to be time-barred, those litigants could not then avail themselves of the equitable power of the district court. *See id.*

Thompson v. Smith, 173 Fed. Appx. 729, 732-33 (11th Cir. 2006) (not published in the Federal Reporter).

This Court notes that the Third Circuit has placed a lesser burden on capital defendants to establish that equitable tolling is warranted. See Fahy v. Horn, 240 F.3d 239, 244-45 (3d Cir.) (finding that, in a capital case, a court must allow less than "extraordinary" circumstances to trigger equitable tolling of the one-year statute of limitations under AEDPA when a petitioner has been diligent in asserting his or her claims and rigid application of the statute would be unfair), cert. denied, 534 U.S. 944 (2001). However, the Eleventh Circuit has consistently been more in the

line of the reasoning of the Seventh Circuit in Johnson v. McBride,
381 F.3d 587, 590-91 (7th Cir. 2004), cert. denied, 544 U.S. 926
(2005), in which the court addressed this issue as follows:

> Johnson contends that prisoners under sentence
> of death should receive different treatment.
> Yet neither the text of § 2244(d) nor the
> principle that lawyers are agents for their
> clients draws any distinction between capital
> punishment and other sanctions.   The Supreme
> Court held in *Coleman* and *Giarratano* that all
> prisoners, including those sentenced to death,
> are responsible for their own legal affairs on
> collateral attack and cannot demand a lawyer
> at public expense or obtain relief from the
> shortcomings of their counsel.   In *Coleman* a
> prisoner's post-conviction counsel filed his
> notice of appeal in state court three days
> late; this default meant that Coleman failed
> to exhaust available state remedies and thus
> wiped out the prospects of collateral review
> in federal court.    The Supreme Court
> recognized that counsel was to blame but
> enforced the default nonetheless, holding that
> there would be no special dispensations in
> capital proceedings.

> To the extent *Fahy v. Horn*, 240 F.3d 239,
> 244-45 (3d Cir. 2001), suggests that
> attorneys' errors in handling collateral
> attacks against death sentences justify
> equitable tolling even though the identical
> conduct in other cases would not, it is hard
> to reconcile with *Coleman*, which the third
> circuit did not mention.  We agree with *Rouse
> v. Lee*, 339 F.3d 238, 251 (4th Cir. 2003) (en
> banc)--another capital case in which counsel
> foolishly waited until the end to mail a
> petition and believed that Rule 6(e) added
> three days to the statutory filing
> deadline--that "[a]llowing consideration of
> the merits of time-barred claims to creep into
> the equitable tolling analysis lets
> petitioners effectively circumvent the statute
> of limitations because the merits of their
> claims will always be considered.  This would

enable petitioners who were in no way prevented from complying with the statute of limitations to create delay and undermine finality--two of the reasons that precipitated enactment of the AEDPA statute of limitations. [It is thus best never] to apply equitable tolling based on a factor that had nothing to do with [a] failure to file on time." It is unnecessary to add to the discussion of this subject in *Rouse*, 339 F.3d at 251-56.

Johnson enjoyed thorough consideration by the Supreme Court of Indiana on both direct appeal and collateral attack. To obtain another round of review in federal court, Johnson had to meet the statutory criteria. He did not do so, and we are not authorized to excuse his non-compliance.

As an additional matter, Petitioner Thomas states that "[t]he question presented by this petition is whether Congress in the Antiterrorism and Effective Death Penalty Act has enacted jurisdictional time limits that are either facially invalid, or invalid in their application in this case, unconstitutional suspensions of the writ of habeas corpus." Reply to Respondents' Limited Response (Doc. #23) (hereinafter Reply) at 10-11. The Court looks to the Suspension Clause:

The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Despite this restriction, the Supreme Court has held that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)). In *Swain v. Pressley*, 430 U.S. 372, 97 S.Ct.

> 1224, 51 L.Ed.2d 411 (1977), the Supreme Court
> held that "the substitution of a collateral
> remedy which is neither inadequate nor
> ineffective to test the legality of a person's
> detention does not constitute a suspension of
> the writ of habeas corpus." *Id*. at 381, 97
> S.Ct. 1224.

Tinker v. Moore, 255 F.3d 1331, 1334 n.2 (11th Cir. 2001), cert.

denied, 534 U.S. 1144 (2002).

"AEDPA limitations periods do not *per se* constitute a
suspension of the writ. *See Tinker v. Moore,* 255 F.3d 1331, 1334
(11th Cir. 2001); *Wyzykowski v. Dept. of Corr.*, 226 F.3d 1213 (11th
Cir. 2000)." Johnson v. United States, 340 F.3d 1219, 1228 n.8
(11th Cir. 2003), aff'd, 544 U.S. 295 (2005). "Moreover, the
availability of equitable tolling in cases 'when a movant untimely
files because of extraordinary circumstances that are both beyond
his control and unavoidable even with diligence,' *Steed*, 219 F.3d
at 1300 (quotation and citation omitted), ensures that § 2244's
limitation is constitutionally applied . . . ." Tinker, 255 F.3d
at 1334.

## IV.  William Greg Thomas

### Procedural Background

On March 24, 2003, Petitioner Thomas filed a Motion for
Appointment of Counsel Pursuant to 18 U.S.C. § 3001 *et seq.* and 21
U.S.C. § 848 *et seq.* for Representation in To-Be-Filed Federal
Habeas Corpus Proceedings in a Capital Case (Doc. #1).  The motion
states that counsel was contacted by Petitioner's state post-

11

conviction counsel in February, 2003, she returned his call on March 3, 2003, and due to the interaction of the time frames of the state and federal litigation, the matter was of an urgent nature. Thus, the Court immediately conducted a hearing on March 26, 2003, and Mary Catherine Bonner, Esquire, appeared telephonically and requested immediate pre-petition appointment so that she could timely prepare and file a habeas petition.  Ms. Bonner stated her qualifications were that she was in good standing with the Court since 1979, she practiced before both the Eleventh Circuit and the United States Supreme Court, she litigated both 28 U.S.C. § 2254 and § 2255 actions, and she had represented three people on death row in state capital cases.  The Court, comforted that Ms. Bonner was experienced capital counsel, stated it would enter an order appointing her.  Clerk's Minutes (Doc. #2), filed March 26, 2003. The order appointing counsel was filed April 2, 2003.

Based on Ms. Bonner's statements of the urgent timing, the Court expected a petition to be filed almost immediately.  However, nothing happened.  Finally, on June 4, 2003, the Court entered an order requiring Petitioner to advise the Court, no later than June 17, 2003, of the status of the case.  Order (Doc. #5).  Unknown to the Court at that time, Ms. Bonner had already let the one-year limitation period run.  Ms. Bonner also failed to respond to the Court's status order.

On February 19, 2004, the Court ordered Petitioner to advise the Court, no later than March 15, 2004, of the status of the case or face dismissal for failure to prosecute. Order (Doc. #7). On March 15, 2004, Petitioner filed a status report and asked leave to file her habeas petition no later than March 19, 2004. (Doc. #8). The Court entered an Order (Doc. #9), filed on March 18, 2004, stating that leave is not required to file a petition, and that any determination as to the timeliness of the petition would be made after the filing of the petition and the response.

At long last, the Petition (Doc. #12) was filed on March 22, 2004. The Memorandum (Doc. #13) was filed two days later, on March 24, 2004. The Respondents named in the Petition were ordered to file a limited response to the Petition in which they should address only whether the action was timely filed. Order to Show Cause and Notice to Petitioner (Doc. #14), filed April 7, 2004. On April 23, 2004, Respondents' Limited Response in Opposition to the Petition for Writ of Habeas Corpus (Doc. #15) (hereinafter Response) was filed.

On August 31, 2004, Petitioner filed his Reply (Doc. #23), and Respondents filed a Supplement to Respondents' Limited Response (Doc. #25) on August 3, 2005. Finally, on August 26, 2005, Respondents filed a Second Supplement to Respondents' Limited Response (Doc. #26), attaching a copy of Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005) (finding the state's provision of

an "incompetent" registry attorney is not an extraordinary circumstance that warrants the application of equitable tolling and the provision of an "incompetent" attorney through the state registry system is not the type of state impediment envisioned in 28 U.S.C. § 2244(d)(1)(B)), cert. granted, 126 S.Ct. 1625 (2006).

The Court conducted oral argument on January 18, 2006, to address the timeliness issue. Thereafter, I appointed Mr. Mills as co-counsel and he filed a supplemental brief on timeliness. (Doc. #36) (hereinafter Supplemental Response). Respondents' Reply to "Petitioner's Supplemental Response Regarding Timeliness" (Doc. #37) (Supplemental Reply) was filed on April 14, 2006.

## The Limitations Period

Petitioner challenges his 1994 state court (Duval County, Florida) judgment of conviction for first degree murder, kidnapping and burglary with battery, for which he received sentences of death, life and life.

The Supreme Court of Florida affirmed Petitioner's conviction and sentence for the charge of first degree murder on March 20, 1997. Ex. B;[5] Thomas v. State, 693 So.2d 951 (Fla. 1997). Rehearing was denied on May 15, 1997. Ex. C. The mandate issued on June 18, 1997. Ex. D. A petition for writ of certiorari was

---

[5] The Court hereinafter refers to the Respondents' Exhibits, filed on April 23, 2004, as "Ex."

filed on September 18, 1997.  Ex. E.  It was denied on November 17, 1997.  Ex. F; Thomas v. Florida, 522 U.S. 985 (1997).

Respondents contend, and this Court agrees, that Petitioner has not complied with the one-year period of limitation as set forth in 28 U.S.C. § 2244(d).  The one-year limitation period in Petitioner's case began to run on November 18, 1997.  Thus, Petitioner should have filed this action on or before November 17, 1998, unless any periods of time can be excluded from this one-year limitation period because Petitioner was pursuing a properly filed application for state post-conviction relief.

The one-year time period ran for a period of 321 days, until Petitioner filed a Motion to Vacate Judgment and Sentence with Special Request for Leave to Amend on October 5, 1998.  Ex. G. Appointed Registry attorney,[6] Jefferson Morrow, Esquire, filed the motion.  Id.  Amendments were filed on April 19, 2000, and on August 15, 2000.  Ex. H at 1.  On August 17, 2000, Mr. Morrow was allowed to withdraw as post-conviction counsel, and Dale G. Westling, Sr., another Registry attorney, was appointed to represent Petitioner.  Ex. A at 2.  An evidentiary hearing was conducted on January 29, 2001.  Ex. H at 1.  The motion was denied. Ex. H.  On January 30, 2003, the Supreme Court of Florida affirmed the denial of the post-conviction motion.  Ex. J; Thomas v. State,

---

[6] Mr. Morrow is a Registry attorney listed by the Commission on Capital Cases of the State of Florida.  See § 27.710, Fla. Stat.

838 So.2d 535, 542 (Fla. 2003).   The mandate issued on March 3, 2003.  Ex. K.

As of March 3, 2003, Petitioner had forty-four days left of the one-year period to file his federal petition, unless he properly filed a state application for post-conviction relief during that forty-four day period, which would have tolled the limitation period.   Petitioner did not file any state post-conviction motions during that forty-four day period.

Thus, Petitioner's federal petition was due to be filed by April 16, 2003.   Instead of filing a federal petition for writ of habeas corpus, Petitioner, through counsel, filed a motion for appointment of counsel with this Court on March 24, 2003. Apparently, counsel wanted the appointment of the Court before she filed the habeas petition.   The Court, responding to counsel's urgent request, promptly appointed her.   Counsel knew as of the hearing with the Court on March 26, 2003, that she was going to be appointed.  She could have filed the petition, even if bare-bones, by the April 16, 2003 deadline.   But she did not.   Indeed, only after twice being questioned by the Court, acting <u>sua</u> <u>sponte</u>, did Petitioner's counsel finally file a petition on March 22, 2004, almost a year after her appointment.

The one-year limitation period continues to run even if a petitioner files a motion for appointment of counsel in federal court until such time as a petition for writ of habeas corpus is

16

actually filed.  See Woodford v. Garceau, 538 U.S. 202, 208 (2003) (holding that a federal habeas case commences with the filing of an application for habeas relief, not with the filing of a motion for appointment of federal habeas counsel); Lookingbill v. Cockrell, 293 F.3d 256, 263 (5th Cir. 2002) ("A habeas petition is pending only after a petition for a writ of habeas corpus itself is filed. Thus, the filing of the federal habeas petition--not of a motion for appointment of counsel--tolls limitations.")  (internal quotation marks, citation and footnote omitted), cert. denied, 537 U.S. 1116 (2003); see also Stafford v. Thompson, 328 F.3d 1302, 1305 (11th Cir. 2003) (per curiam) (citing Woodford for the proposition that a case does not become "pending" until the actual application for habeas corpus relief is filed in federal court); Isaacs v. Head, 300 F.3d 1232, 1245 (11th Cir. 2002) (finding "the relevant date for purposes of judging AEDPA's applicability to a habeas petition is the date on which the actual § 2254 petition was filed."), cert. denied, 538 U.S. 988 (2003).

In the Reply, Petitioner urges this Court not to employ the one-year limitation as a bar to Petitioner's case for a variety of reasons.  First, Petitioner asserts that the state ignored the substantive issues presented in the Petition and Memorandum and their application to the principles of timeliness.  Reply at 4.  It is clear that this Court should not focus "upon the merits of the case to justify equitable tolling."  Helton v. Sec'y for Dept. of

<u>Corr.</u>, 259 F.3d 1310, 1315 (11th Cir. 2001) (per curiam), <u>cert</u>.
<u>denied</u>, 535 U.S. 1080 (2002).  The Court should not look to the
circumstances surrounding the underlying conviction; instead, the
Court should look to the circumstances surrounding the late filing.

The Supreme Court of the United States recently stated:

> Generally, a litigant seeking equitable
> tolling bears the burden of establishing two
> elements:  (1) that he has been pursuing his
> rights diligently, and (2) that some
> extraordinary circumstance stood in his way.

<u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005) (citation omitted);
<u>see</u> <u>Anderson v. Attorney Gen. of Florida</u>, 135 Fed. Appx. 244, 246
(11th Cir. 2005) (per curiam) (not published in the Federal
Reporter) (noting that in <u>Pace</u>, the petitioner failed to show that
he exercised the requisite diligence), <u>cert</u>. <u>denied</u>, 126 S.Ct. 835
(2005).

Petitioner complains that state court appointed counsel, Mr.
Morrow, squandered 320+ days prior to filing a skeletal state post-
conviction motion.  In the original motion, Mr. Morrow referred to
his very recent appointment, and he sought leave to amend the
motion.  Ex. G.  Upon review, the circuit court had before it a
post-conviction motion and two amendments to the motion, prior to
Mr. Morrow's withdrawal as post-conviction counsel.  Ex. H at 1;
Ex. A at 2.  Further, the Rule 3.580/3.851 motion (hereinafter
3.850 motion) was not untimely filed.

Petitioner also seems to be suggesting that there was "state action" because Petitioner's attorneys for the state post-conviction motion were court appointed Registry attorneys. Further, Petitioner asserts that the "state action" of appointing attorneys who failed or were prevented from raising all of the pertinent issues and challenges to all of Petitioner's convictions (including the non-death cases) constituted an impediment to filing an application created by state action.

Petitioner has shown no impediment to the filing of the Rule 3.850 motion or to the filing of the federal petition.  No government action prevented the filing of such motions.  In essence, what Petitioner is really complaining about is the conduct of court appointed counsel in filing "a mere placeholder motion" and consuming 320+ days doing so.  Reply at 24.  However, even if this is so, the Eleventh Circuit has made plain that no form of attorney negligence will justify equitable tolling:

> Equitable tolling is to be applied when "'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1312 (11th Cir. 2001).  Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling. *Drew*, 297 F.3d at 1286-87.  Because of the difficult burden, this Court has rejected most claims for equitable tolling. *See, e.g., Johnson v. United States*, 340 F.3d 1219 (11th Cir. 2003) (holding that petitioner's inaction during the year after his conviction was affirmed on direct appeal did not justify equitable tolling); *Helton*,

19

> 259 F.3d at 1312 (rejecting petitioner's
> reliance upon counsel's mistaken calculation
> of limitations period because petitioner did
> not show due diligence in ascertaining the
> correct period); *Steed v. Head*, 219 F.3d 1298
> (11th Cir. 2000) (holding that attorney's
> miscalculation of the limitations period or
> mistake could not be the basis for equitable
> tolling); *Sandvik v. United States*, 177 F.3d
> 1269 (11th Cir. 1999) (holding that attorney
> negligence will not warrant equitable
> tolling).

<u>Diaz v. Sec'y for the Dep't of Corr.</u>, 362 F.3d 698, 700-01 (11th Cir. 2004) (per curiam).

Petitioner attempts to distinguish <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), by claiming that the ineffectiveness in <u>Coleman</u> was by an attorney who volunteered and served as counsel at Mr. Coleman's pleasure. Here, Petitioner argues, he had appointed counsel; therefore, he contends that the state has the responsibility to ensure that he is represented by competent counsel and Petitioner should not bear the responsibility for counsel's errors.

Under Eleventh Circuit precedent, this contention must fail. In <u>Howell v. Crosby</u>, 415 F.3d 1250, 1251 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, 126 S.Ct. 1059 (2006), Howell, a Florida prisoner under sentence of death, had appointed counsel to represent him in his state post-conviction proceeding. Appointed counsel actually filed the state post-conviction motion two months after the federal limitations period had already elapsed. <u>Id</u>. The Eleventh Circuit found:

> Howell's argument for equitable tolling
> fails.   Howell   was   not   a   victim   of
> extraordinary   circumstances   beyond   his
> control, and the district court did not commit
> clear error when it determined that Howell was
> not diligent.   As we concluded in *Sandvik,*
> *Steed,* and *Helton v. Secretary for the*
> *Department of Corrections*, 259 F.3d 1310, 1313
> (11th Cir. 2001), attorney negligence is not a
> basis for equitable tolling, especially when
> the   petitioner   cannot   establish   his   own
> diligence in ascertaining the federal habeas
> filing deadline.

Howell, 415 F.3d at 1252.

The Fourth Circuit addressed a similar equitable tolling claim that was raised by the death-sentenced petitioner in Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004). The court stated, in pertinent part:

> Former counsel's errors are attributable to
> Rouse   not   because   he   participated   in,
> ratified, or condoned their decisions, but
> because   they   were   his   agents,   and   their
> actions   were   attributable   to   him   under
> standard principles of agency.   *See Coleman v.*
> *Thompson*,   501   U.S.   722,   753-54,   111   S.Ct.
> 2546, 115 L.Ed.2d 640 (1991) (explaining that
> attorney   error,   short   of   ineffective
> assistance   of   counsel,   is,   under   standard
> principles   of   agency,   attributable   to   the
> client); *Murray v. Carrier*, 477 U.S. 478, 488,
> 106   S.Ct.   2639,   91   L.Ed.2d   397   (1986)   ("[A]
> defendant   [who]   is   represented   by   counsel
> whose   performance   is   not   constitutionally
> ineffective . . . bear[s] the risk of attorney
> error . . . ."); *see also Irwin v. Dep't of*
> *Veterans Affairs*, 498 U.S. 89, 92, 111 S.Ct.
> 453, 112 L.Ed.2d 435 (1990) ("Under our system
> of   representative   litigation,   each   party   is
> deemed bound by the acts of his lawyer-agent
> and is considered to have notice of all facts,
> notice   of   which   can   be   charged   upon   the

attorney."   (internal   quotation   marks omitted)).

In both *Carrier* and *Coleman*, the Supreme Court considered whether an attorney's error constituted cause for a procedural default, which like equitable tolling, requires a showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488, 106 S.Ct. 2639.  The Court held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546 (quoting *Carrier*, 477 U.S. at 488, 106 S.Ct. 2639).  Attorney error that constitutes ineffective assistance of counsel is not attributable to the petitioner.  This is so, however, "not because . . . the error is so bad that 'the lawyer ceases to be an agent of the petitioner,'" but rather, because "'the Sixth Amendment itself requires that responsibility for the default be imputed to the State.'" *Id*. at 754, 111 S.Ct. 2546 (quoting *Carrier*, 477 U.S. at 488, 106 S.Ct. 2678).  Thus, the *Coleman* Court held that attorney error during state habeas proceedings was not "cause" because "[t]here is no constitutional right to an attorney in state post-conviction proceedings . . . [and][c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id*. at 752, 111 S.Ct. 2546.

Similarly, Rouse had no constitutional right to counsel in his federal habeas proceedings.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555-56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no constitutional right to counsel beyond first appeal of right), *Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995) (no constitutional right to counsel during federal

habeas).[7]  Rouse did have a statutory right
to counsel, *see* 21 U.S.C.A. § 848(q)(4) (West
1999), but there can only be constitutional
ineffective assistance of counsel where there
is a constitutional right to counsel.
*Coleman*, 501 U.S. at 752, 111 S.Ct. 2546.  In
the absence of constitutional ineffective
assistance of counsel, attorney error is
attributable to the petitioner.  *Id*. at 753,
111 S.Ct. 2546.  Accordingly, because Rouse's
former habeas counsel's error cannot be
constitutionally ineffective, that error can
"fairly be attributable" to Rouse and is not
"external" to his own conduct.  *See Coleman*,
501 U.S. at 753, 111 S.Ct. 2546.

Id. at 249-50 (footnotes omitted); see also Johnson v. McBride, 381

F.3d at 589-90 (finding that the petitioner, whose petition was

mailed to the court by his attorney and arrived at the court one

day after the expiration of the one-year limitation period, was not

entitled to equitable tolling of the limitation period because the

attorney was the petitioner's agent, whose acts were attributable

to the petitioner).

Petitioner claims that because he had a state statutory right

to competent counsel, he cannot be charged with the actions of his

attorney.  As noted above, there can only be constitutionally

ineffective assistance of counsel where there is a constitutional

right to counsel.  Petitioner's statutory right to counsel "'was

---

[7] "While defendants have a Sixth Amendment right to counsel at
trial and on direct appeal, they do not have a corresponding right
to counsel when collaterally attacking their convictions." Hill v.
Jones, 81 F.3d 1015, 1024 (11th Cir. 1996) (citing Pennsylvania v.
Finley, 481 U.S. 551, 555 (1987)), cert. denied, 519 U.S. 1119
(1997). "This is so even in capital cases." Id. (citing Murray v.
Giarratano, 492 U.S. 1, 10 (1989)).

established to alleviate problems in obtaining counsel to represent
Florida's death-sentenced prisoners in collateral relief
proceedings,' Spalding, 526 So.2d at 72, but 'did not add anything
to the substantive state-law or constitutional rights of such
persons.' Troedel, 479 So.2d at 737." Durocher v. Singletary, 623
So.2d 482, 483 (Fla.) (per curiam), cert. dismissed, 114 S.Ct. 23
(1993).

Of course, Petitioner has not shown Mr. Morrow's performance
was deficient for filing the Rule 3.850 motion after 321 days of
the one-year period had run.  The Rule 3.850 motion was timely and
was addressed by the circuit court.  Unlike counsel in Howell,
Petitioner's counsel did not file the Rule 3.850 motion after the
one-year federal limitation period had elapsed.  In fact, in the
instant case, there were forty-four days left in the federal one-
year period after completion of the state postconviction
proceedings.

Although not entirely clear, apparently Petitioner is claiming
that there was "state action" because the Registry attorney, Mr.
Morrow, could not attack the plea bargain in a sister case (the
murder of Petitioner's mother).  One of the aggravating
circumstances in the instant case was the Petitioner's plea and
conviction in the murder case of Petitioner's mother.  Petitioner
asserts that "[t]he confluence of the actions of the trial court,
the court-appointed defense counsel and the prosecution forced him

to remain with the counsel who ultimately forced upon Mr. Thomas the plea agreement which *absolved trial counsel of all instances of ineffectiveness in both cases.*"  Reply at 6.

The decision of Petitioner to accept a plea offer in a different case is not "state action."  There was no state action which prevented Petitioner from timely pursuing his state court and federal remedies.  In fact, claims of the ineffective assistance of trial counsel were raised in the Rule 3.850 motion, an evidentiary hearing was conducted, trial counsel (Mr. Nichols) testified and the circuit court found the testimony of defense counsel more credible than that of the Defendant.  Ex. H.  The circuit court found that Mr. Nichols informed Petitioner that the murder of his mother could be utilized as an aggravating circumstance in the case concerning the murder of Petitioner's wife.  <u>Id</u>. at 26.  Mr. Nichols advised Petitioner that it would be best to secure a life sentence on the mother's case, as he felt that if the death penalty was obtained in that case, it would more likely be upheld than in the case of the murder of the wife.  <u>Id</u>.

The Court conducted oral argument on the timeliness issue on January 18, 2006.  (Doc. #38).  The essence of Petitioner's counsel's position was that Petitioner should be entitled to equitable tolling of the one-year period because federal post-conviction counsel needed more time to investigate an issue and it was unreasonable to require counsel to file a "shell" petition

without affording adequate time for research and investigation in order to file a supported and coherent argument in the petition. However, this position is foreclosed by Eleventh Circuit law. <u>See</u> <u>Howell</u>, 415 F.3d at 1252; <u>Lawrence</u>, 421 F.3d at 1226; <u>Logreira v. Crosby</u>, 161 Fed. Appx. 902, 903 (11th Cir. 2006) (per curiam) (not published in the Federal Reporter) (noting the remedy of equitable tolling is extraordinary and is applied sparingly, such as when state conduct prevents timely filing), <u>petition</u> <u>for</u> <u>cert</u>. <u>filed</u>, (U.S. May 12, 2006) (No. 05-11464).

Here, there were no extraordinary circumstances that were beyond Petitioner's control and unavoidable even with diligence. Petitioner and his counsel had limited, but sufficient, time to file a federal petition.  Further, he has not asserted that he is actually innocent.  <u>See</u> <u>Wyzykowski v. Dep't of Corr.</u>, 226 F.3d 1213, 1218-19 (11th Cir. 2000) (finding the district court should address the factual issue of whether the petitioner can make a showing of actual innocence prior to addressing a challenge to the limitation period established by AEDPA based on the Suspension Clause).

Briefly, in the Reply at 42, Petitioner addresses the calculation of the one-year period if 28 U.S.C. § 2244(d)(1)(C) & (D) were applicable to Petitioner's case. Neither <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) nor <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) apply retroactively; therefore, 28 U.S.C. § 2244(d)(1)(C) is

inapplicable.  See Schriro v. Summerlin, 542 U.S. 348, 358 (2004);
Turner v. Crosby, 339 F.3d 1247, 1283 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004); McCoy v. United States, 266 F.3d
1245, 1256-58 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002).
Petitioner concedes that 28 U.S.C. § 2244(d)(1)(D) does not apply
as he has not asserted actual innocence.  Reply at 42.

In the Supplemental Response, Petitioner claims he is entitled
to equitable tolling because he directed his counsel to file a
federal petition within the AEDPA deadline.  In support of this
argument, there is an Affidavit presented by Registry attorney
Jefferson W. Morrow, Exhibit A attached to the Supplemental
Response, stating the Petitioner advised him that "he wanted to
pursue all available postconviction remedies, including a writ of
habeas corpus in federal court if his state postconviction
challenges were unsuccessful."  There is also an Affidavit of Mary
Catherine Bonner wherein she states that Mr. Westling (substitute
appointed counsel for Petitioner in state court) told her that
Petitioner "had directed him to prepare and file a federal habeas
petition."  Exhibit B attached to the Supplemental Response.  Ms.
Bonner, knowing the AEDPA deadline was approaching, and having not
been appointed by the state court to replace Mr. Westling, sought
appointment in this Court.  Id.  She was appointed to represent
Petitioner by this Court in sufficient time to be able to file a
federal petition, but simply failed to file a timely petition.

27

Counsel's decision to file late constitutes attorney negligence. That Petitioner had told his attorneys to proceed with a federal petition if he were unsuccessful in state court does not negate the fact that counsel, appointed by this Court, had time to file a Petition within the one-year period but failed to do so or chose not to do so.

Petitioner argues that the Eleventh Circuit cases finding that attorney negligence is not a basis for equitable tolling are wrongly decided. This, of course, is not a question that this Court can decide. Petitioner asks this Court, instead, to "keep this matter under advisement until the Supreme Court decides *Lawrence*." Supplemental Response at 10. This Court cannot ignore currently binding circuit precedent. Further, "because the State has a substantial interest in the finality of state criminal proceedings[,]" this Court must not stay or otherwise delay the proceedings to await a ruling by the Supreme Court of the United States in <u>Lawrence</u>. <u>See</u> <u>Lawrence</u>, 421 F.3d at 1224 n.1.

Petitioner also points to cases from other circuits, arguing there may be exceptional or limited circumstances where attorney conduct can form the basis for equitable tolling. As noted by Respondents these cases are not controlling in this Circuit: "As we concluded in *Sandvik, Steed, and Helton v. Secretary for the Department of Corrections*, 259 F.3d 1310, 1313 (11th Cir. 2001), attorney negligence is not a basis for equitable tolling . . . ."

28

Howell v. Crosby, 415 F.3d at 1252.  In sum, equitable tolling will not be extended to these circumstances "because the ultimate failure to file within the statutory period was a direct result of decisions made and actions taken by the petitioner or his attorney. Having created the situations that caused their petitions to be time-barred, those litigants could not then avail themselves of the equitable power of the district court." Thompson, 173 Fed. Appx. at 733.

Petitioner contends that there are unique features about capital collateral proceedings in Florida that militate more powerfully for the application of equitable tolling in this case. In Florida, there are Capital Collateral Regional Counsel and a statewide system of Registry attorneys in private practice who may be appointed to represent persons convicted and sentenced to death in postconviction collateral proceedings.  § 27.702(1), Fla. Stat.; § 27.710(1), Fla. Stat.  Of course, here, Ms. Bonner was not appointed by the Florida courts as Capital Collateral Regional Counsel or as a Registry attorney.  Even if she had been appointed by the state court, this argument was rejected in Lawrence, 421 F.3d at 1126 ("Lawrence's assertion that the State impeded him from timely filing by providing an incompetent attorney to assist him after setting up a State registry system to monitor attorney performance, is meritless.  This is not the type of State impediment envisioned in § 2244(d)(1)(B)."). The court continued:

> Making the most of a novel argument,
> Lawrence posits that the State's provision to
> him of an incompetent attorney justifies the
> imposition of equitable tolling.  This is not
> an extraordinary circumstance that warrants
> the application of equitable tolling.

Lawrence, 421 F.3d at 1226.

As a final matter, Petitioner argues that 28 U.S.C. § 2244(d) is unconstitutional, while recognizing that binding Eleventh Circuit precedent holds otherwise.  Again, this Court must abide by Circuit law.

In sum, notwithstanding the Court's concerns expressed in the Preface to this opinion, supra, pp. 1-4, binding precedent establishes that Petitioner is not entitled to the extraordinary relief of equitable tolling.[8]  For this reason, Mr. Thomas' case, Case No. 3:03-cv-237-J-32, must be dismissed with prejudice as untimely filed.

---

[8] Any remaining arguments in support of finding that the one-year period of limitation should not be imposed upon him are found to be unpersuasive.

30

## V.   Floyd Damren

### Procedural Background

On May 14, 2003, Petitioner Floyd Damren, through counsel,[9] filed in this Court a Motion for Leave to Proceed *In Forma Pauperis* (Doc. #1).   On May 20, 2003, this Court deferred ruling on the Motion for Leave to Proceed *In Forma Pauperis* and granted Petitioner time to fully complete and file an Affidavit of Indigency form.  See Order (Doc. #2), filed May 20, 2003.   On May 30, 2003, Petitioner filed an Amended Motion for Leave to Proceed *In Forma Pauperis* (Doc. #4) and an Affidavit of Floyd Damren (Doc. #5).   On June 16, 2003, this Court deferred ruling on the Amended Motion for Leave to Proceed *In Forma Pauperis*, stating that it would be ruled on after Petitioner completed and filed an Affidavit of Indigency form accompanied by a computer printout.  See Order (Doc. #6), filed June 16, 2003.   Further, this Court granted Petitioner additional time to fully complete and file an Affidavit of Indigency form.  See id.

On July 28, 2003, Petitioner filed an Affidavit of Indigency (Doc. #7) with a computer printout of his financial transactions in his prison account.   On August 19, 2003, this Court granted Petitioner's Motion for Leave to Proceed *In Forma Pauperis* (Doc.

_____

[9] Petitioner Floyd Damren is represented by Jefferson W. Morrow, Esquire, who was appointed by the state trial court to represent Petitioner in his state post-conviction proceedings.  See Motion for Leave to Proceed *In Forma Pauperis* (Doc. #1), filed May 14, 2003.

#1), Petitioner's Amended Motion for Leave to Proceed *In Forma Pauperis* (Doc. #4) and Petitioner's Affidavit of Indigency (Doc. #7), ruling that Petitioner may proceed *in forma pauperis* in this action.  <u>See</u> Order (Doc. #8), filed August 19, 2003.

On August 29, 2003, Petitioner filed an Application for Leave to File Petition for [Writ of] Habeas Corpus under 28 U.S.C. § 2254 (Doc. #9), requesting this Court "to hold the proceedings in abeyance and request[ing] to amend this Petition with issues from his State Habeas Petition and his State 3.851 Petition."  On September 9, 2003, this Court granted Petitioner's Application for Leave to File Petition for [Writ of] Habeas Corpus under 28 U.S.C. § 2254 only to the extent that Petitioner was ordered to file a Petition for Writ of Habeas Corpus on or before November 12, 2003. <u>See</u> Order (Doc. #10), filed September 9, 2003.

On November 24, 2003, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. #12) (hereinafter Petition) pursuant to 28 U.S.C. § 2254.  Thereafter, Petitioner filed an Application for Leave to File Petition for [Writ of] Habeas Corpus Under 28 U.S.C. §2254 (Doc. #21) and an Amended Petition for Writ of Habeas Corpus (Doc. #24).  After a hearing on pending motions on July 1, 2004, this Court, on August 16, 2004, granted Jefferson W. Morrow's Motion for Appointment of Counsel Pursuant to 18 U.S.C. §3001 *et seq.* and 21 U.S.C. §848 *et seq.* for Representation in Capital Federal Habeas Corpus Proceedings (Doc. #20) and appointed Mr.

32

Morrow to represent Petitioner Damren in this action.[10]  See Order (Doc. #33), filed August 16, 2004.  Further, this Court denied Petitioner's Application for Leave to File Petition for [Writ of] Habeas Corpus Under 28 U.S.C. §2254 (Doc. #21), without prejudice to the right of Petitioner to confer with co-counsel[11] regarding seeking leave of court to file an amended petition.  See id.  This Court concluded that "Petitioner is now proceeding on the Petition for Writ of Habeas Corpus (Doc. #12), filed November 24, 2003." See id. at 3.

In the Petition, Petitioner Damren challenges a 1995 state court (Clay County, Florida) judgment of conviction for first degree murder, armed burglary and aggravated assault.  On November 3, 2004, Respondents filed a Motion for Summary Judgment (Doc.

---

[10] At the July 1, 2004, hearing, Mr. Morrow acknowledged that he is a Registry attorney listed by the Commission on Capital Cases of the State of Florida (see § 27.710, Fla. Stat.), but was not a Criminal Justice Act (hereinafter CJA) Panel attorney for the Middle District of Florida.  See Order (Doc. #33) at 3.  Therefore, Mr. Morrow was admitted to the CJA panel pro hace vice.  See id. at 4, paragraph 1.B.

[11] At the July 1, 2004, hearing, Mr. Morrow expressed his interest in having co-counsel appointed by this Court to assist him with this federal habeas corpus case.  See also Order (Doc. #33), filed August 16, 2004 (this Court deferred ruling on Petitioner's Motion to Appoint Co-Counsel (Doc. #32), stating the motion would be ruled on after Petitioner had submitted the qualifications of Mr. William Kent for the Court's review and noting that "[t]his is necessary for the Court to have a record upon which the Court can base its decisions regarding the employment of co-counsel, particularly the experience of co-counsel in federal habeas and death penalty litigation."); Order (Doc. #34), filed October 22, 2004; Order (Doc. #53), filed February 27, 2006.

#35), contending that Petitioner has not complied with the one-year period of limitation as set forth in 28 U.S.C. § 2244(d).   In support of Respondents' contentions, they submitted exhibits.[12]

On January 12, 2005, Petitioner responded to Respondents' Motion for Summary Judgment.  <u>See</u> Petitioner's Response to Motion for Summary Judgment (Doc. #38) (hereinafter Petitioner's Response) with accompanying exhibits (hereinafter Petitioner's Ex.). Respondents replied.[13]  <u>See</u> Respondents' Reply to "Petitioner's Response to Motion for Summary Judgment" (Doc. #40) (hereinafter Respondents' Reply).  Additionally, Respondents filed a Supplement to "Respondents' Motion for Summary Judgment" (Doc. #47) and a

---

[12] The Respondents' exhibits A-J were filed with their Motion for Summary Judgment (Doc. #35), and exhibits K-N were filed with Respondents' Reply (Doc. #40).  This Court will hereinafter refer to Respondents' exhibits as "Ex."

[13] The Respondents assert that Petitioner's Response (Doc. #38) is untimely and request that this Court strike the response.  <u>See</u> Respondents' Reply at 3.  Specifically, citing Local Rule 3.01, they claim  that a response to the motion for summary judgment was due within ten (10) days.   <u>Id</u>.   The record reflects that Petitioner's Response (Doc. #38) was filed on January 12, 2005, seventy (70) days after the filing of the motion for summary judgment, and during that time period Petitioner filed a motion to appoint co-counsel.  This Court notes, too, that Respondents' Reply was not filed in compliance with Local Rule 3.01(c) in that "[n]o party shall file any reply or further memorandum directed to the motion or response . . . unless the Court grants leave."  However, this Court is concerned with a full and fair resolution of the one-year period of limitation and equitable tolling issues, and therefore this Court will accept both Petitioner's Response (Doc. #38) and Respondents' Reply (Doc. #40) as properly and timely filed.  Additionally, this Court will accept the parties' exhibits as properly and timely filed.

Second Supplement to "Respondents' Motion for Summary Judgment" (Doc. #49) to notify this Court of recent case law.[14]

On January 18, 2006, oral argument was conducted to address the one-year limitation period and equitable tolling issues. Thereafter, on February 27, 2006, the Court appointed John S. Mills, Esquire, as Petitioner's co-counsel for the limited purpose of further addressing the timeliness and equitable tolling issues. On May 15, 2006, Petitioner's Supplemental Response Regarding Timeliness (Doc. #60) (hereinafter Petitioner's Supplemental Response) was filed, and Respondents' Reply to "Petitioner's Supplemental Response Regarding Timeliness" (Doc. #61) (hereinafter Respondents' Supplemental Reply) was thereafter filed on June 12, 2006.

## The Limitation Period

After a jury trial, Petitioner Damren was convicted of first degree murder, armed burglary and aggravated assault and was sentenced to death, life imprisonment and ten years imprisonment, respectively.  On direct appeal, the Supreme Court of Florida affirmed the conviction and sentences on May 8, 1997.  Damren v. State, 696 So.2d 709 (Fla. 1997); Ex. B.  Rehearing was denied on July 8, 1997.  Ex. C.  The mandate was issued on August 7, 1997. Ex. D.  On January 12, 1998, the United States Supreme Court denied

---

[14] Howell v. Crosby, 415 F.3d 1250; Banks v. Crosby, Case No. 4:03-cv-328-RV, Order, filed July 29, 2005; Lawrence v. Florida, 421 F.3d 1221.

Petitioner's petition for writ of certiorari.  <u>Damren v. Florida</u>,
522 U.S. 1054 (1998); Ex. E.

Respondents contend, and this Court agrees, that Petitioner
has not complied with the one-year period of limitation as set
forth in 28 U.S.C. § 2244(d).  <u>See</u> Respondents' Motion for Summary
Judgment.  Petitioner's conviction became final on January 12,
1998, when the United States Supreme Court denied his petition for
writ of certiorari.  This was after the April 24, 1996, effective
date of the AEDPA.  Therefore, AEDPA's one-year limitation period
began to run on January 13, 1998.  Thus, Petitioner should have
filed this action on or before January 12, 1999.  The Petition,
filed in this Court on November 24, 2003, would be untimely unless
Petitioner Damren could avail himself of one of the statutory
provisions which extends or tolls the time period.

The one-year period of limitation ran for 300 days (January
13, 1998, to November 8, 1998) until Petitioner Damren, through
counsel,[15] filed a Motion to Vacate Judgment and Sentence with
Special Request for Leave to Amend pursuant to Fla. R. Crim. P.
3.851 on November 9, 1998.  Ex. F.  On July 2, 2000, he filed an
amended Rule 3.851 motion, raising twenty-six (26) claims.  On

_____

[15] As previously stated, Petitioner Damren was represented by
Jefferson W. Morrow, Esquire, who was appointed for the state court
post conviction proceedings on October 12, 1998.  Petitioner's Ex.
F, Order Appointing Post Conviction Counsel; Ex. F, Motion to
Vacate Judgment and Sentence with Special Request for Leave to
Amend.

April 10, 2001, the circuit court conducted an evidentiary hearing, and on June 20, 2001, the trial court denied the amended Rule 3.851 motion.  Ex. G.  Petitioner appealed to the Supreme Court of Florida and during the pendency of the appeal, Petitioner also filed a petition for writ of habeas corpus in the Supreme Court of Florida.   On January 23, 2003, the Supreme Court of Florida affirmed the lower court's denial of his Rule 3.851 motion and denied the petition for writ of habeas corpus.  Damren v. State, 838 So.2d 512 (Fla. 2003); Ex. I.   The mandate was issued on February 24, 2003.  Ex. J.

The one-year period of limitation was tolled during the pendency of Petitioner's Rule 3.851 motion from November 9, 1998, until February 24, 2003.  The one-year period of limitation started running again the next day, on February 25, 2003.

Therefore, since 300 days of the one-year period of limitation had already run, Petitioner's habeas corpus petition in this Court should have been filed within sixty-five (65) days.   In sum, Petitioner's federal petition was due on April 30, 2003.  However, instead of timely filing a federal petition for writ of habeas corpus, Petitioner, through counsel, filed a Motion for Leave to Proceed *In Forma Pauperis*, on May 14, 2003, in this Court.  By that time, however, the limitation period had already expired.  (Of course, this Court would have had no way of knowing that at the time unless it had undertaken its own independent investigation of

37

the state court proceedings -- a role courts do not usually perform.)

After a total of 572 days[16] had elapsed, Petitioner filed the Petition in this Court on November 24, 2003.  The time kept running because if a petitioner files a motion to proceed *in forma pauperis* in federal court, the one-year period of limitation continues to run until an actual petition for writ of habeas corpus is filed. See Woodford v. Garceau, 538 U.S. at 208 (holding that a federal habeas case commences with the filing of an application for habeas corpus relief); Stafford v. Thompson, 328 F.3d at 1305 (citing Woodford for the proposition that a case does not become "pending" until the actual application for habeas corpus relief is filed in federal court); Isaacs v. Head, 300 F.3d at 1245 (finding "the relevant date for purposes of judging AEDPA's applicability to a habeas petition is the date on which the actual § 2254 petition was filed."); Lookingbill v. Cockrell, 293 F.3d at 263.  Thus, this action is due to be dismissed because it was filed after the expiration of the federal one-year period of limitation.

Petitioner urges this Court not to employ the one-year period of limitation as a bar to Petitioner's case.  Specifically, Petitioner contends that "[s]everal occurrences have equitably

---

[16] The one-year period of limitation ran for 300 days until he filed his motion for post conviction relief and then ran another 272 days (February 25, 2003, through November 23, 2003) until Petitioner filed his Petition in this Court on November 24, 2003. See Respondents' Motion for Summary Judgment at 6.

tolled the running of the statute of limitation period."
Petitioner's Response at 1.  Further, Petitioner states that
Respondents did not assert the limitations defense as early as
possible and "'lied behind a log' and ambushed the Petitioner with
an unexpected defense" almost one year after Petitioner initiated
this habeas proceeding.  Id. at 4 (citation omitted).  However,
Respondents have timely and properly asserted the one-year
limitation argument.  See Respondents' Motion for Summary Judgment
at 4; Respondents' Reply at 7.  For this reason, the one-year
period of limitation and equitable tolling issues will be
addressed.

   Also, Petitioner asserts that he "is equitably entitled to
have his Petition heard on the merits . . . ."  Petitioner's
Response at 4.  However, the Court does not focus on the merits of
the case to justify equitable tolling.  Helton v. Sec'y for Dept.
of Corr., 259 F.3d at 1314-15 (citations omitted) ("The
'extraordinary circumstances' standard applied in this circuit
focuses on the circumstances surrounding the late filing of the
habeas petition, rather than the circumstances surrounding the
underlying conviction.").  The Supreme Court of the United States
recently stated that the litigant seeking equitable tolling is
charged with the burden of establishing two elements:  (1) that he
has been pursuing his rights diligently, and (2) that some

extraordinary circumstance "stood in his way." Pace v. DiGuglielmo, 544 U.S. at 418 (citation omitted).

As previously stated, equitable tolling is appropriate when a prisoner's petition is untimely "because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Johnson v. United States, 340 F.3d at 1266 (citations omitted). The Eleventh Circuit has emphasized, however, that equitable tolling applies "only in truly extraordinary circumstances" and "is typically applied sparingly." Id. (citations omitted); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted). Thus, because of the difficult burden, most claims for equitable tolling are rejected. Further, it is clear that attorney negligence does not warrant equitable tolling. Diaz v. Sec'y for the Dep't of Corr., 362 F.3d at 700-01; Howell v. Crosby, 415 F.3d at 1252 (stating "attorney negligence is not a basis for equitable tolling, especially when the petitioner cannot establish his own diligence in ascertaining the federal habeas filing deadline"); Steed v. Head, 219 F.3d 1298 (11th Cir. 2000) (holding that the attorney's miscalculation of the limitations period or mistake could not be the basis for equitable tolling); Sandvik v. United States, 177 F.3d 1269 (11th Cir. 1999) (holding that attorney negligence will not warrant equitable tolling).

Here, Petitioner Damren has asserted a variety of tolling arguments. Petitioner argues that he is entitled to equitable

tolling based upon Case No. 82,322.   Response at 3.   In Case No. 82,322, the Supreme Court of Florida, on October 20, 1997, granted extensions of time (until January 15, 1998) for filing Rule 3.851 motions for the defendants listed in the order; however, Petitioner was <u>not</u> included.   <u>In Re Rule of Criminal Procedure 3.851 (Collateral Relief After Death Sentence Has Been Imposed) and Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence)</u>, 700 So.2d 682 (Fla. 1997); Ex. L.   Similarly, a subsequent order in Case No. 82,322, issued on January 15, 1998, does <u>not</u> include Petitioner Damren as one of the defendants for whom the time limit was tolled (until June 1, 1998).   <u>In Re Rule of Criminal Procedure 3.851 (Collateral Relief After Death Sentence Has Been Imposed) and Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence)</u>, 708 So.2d 912 (Fla. 1998); Ex. M.

Petitioner states that, on January 26, 1998, he filed a "Motion to Clarify, Second Amended Motion for Relief and Second Amended Motion to Toll and Schedule Operation of Rule 3.852" (hereinafter Motion to Clarify) in the Supreme Court of Florida. Petitioner's Response at 2; Petitioner's Supplemental Response at 2-3.   In Petitioner's Supplemental Response, he sets forth the following chronology:

> During this time period, the Supreme Court of Florida was grappling with a major transition in Florida in the way that capital defendants are represented in postconviction proceedings and the manner in which they may obtain public records necessary for those

proceedings in case numbers SC60-82322 and SC60-92026. *See generally Amendments to Fla. R. Crim. P. - Capital Postconviction Public Records Production (Time Tolling)*, 708 So.2d 913 (Fla. 1998) *("Amendments I")*; *Amendments to Fla. R. C[ri]m. P. - Capital Postconviction Public Records Production (Time Tolling in Re R. Crim. P. 3.851 (Collateral Relief After Death Sentence Has Been Imposed) and Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence)*, 719 So.2d 869 (Fla. 1998) *("Amendments II")*. On January 15, 1998, that court noted that the Capital Collateral Regional Counsels ("CCRC's"), the agencies charged with representing these defendants, had been impeded by a lack of funding and lack of qualified attorneys and needed additional time to proceed with postconviction capital matters. *Amendments I*, 708 So.2d at 913-14.

**On January 26, 1998, the CCRC-North filed a motion for rehearing or clarification on behalf of the Petitioner in those cases and sought clarification as to how the Petitioner could proceed.[17]   On June 25, 1998, the supreme court granted the motion.** *Amendments II*, 719 So.2d at 870-71. In this opinion, the court noted that the legislature had directed that effective July 1, 1998, private counsel was to be appointed to represent defendants in the Petitioner's position. *Id*. at 870. The court recognized that it would have to create a registry of private attorneys for this purpose. *Id*. In order "[t]o accommodate the implementation of the new legislation and the necessity of establishing the registry," the court ordered that the time to file a post-conviction motion would be tolled until October 1, 1998, for a list of defendants that included the Petitioner, which the court

---

[17] Petitioner has provided a copy of the motion, entitled, "Office of the Capital Collateral Counsel for the Northern Region's Motion to Clarify, Second Amended Motion for Relief and Second Amended Motion to Toll and Schedule Operation of Rule 3.852." Petitioner's Notice of Filing in Support of Supplemental Response (Doc. #66), filed August 8, 2006, attached exhibit.

> described as defendants who would either be
> appointed private counsel or have CCRC
> designated counsel by that date. *Id.* at 871.
>
> Attorney Jefferson W. Morrow was the
> registry attorney who was appointed to
> represent Petitioner on October 12, 1998.
> (Aff. of Morrow at 1, paragraphs 1, 2.) The
> Petitioner affirmatively advised Mr. Morrow
> that he wished to preserve his right to seek a
> writ of habeas corpus in federal court if he
> did not obtain post-conviction relief in state
> court. (*Id.* at 2, paragraph 3.) Mr. Morrow
> filed a post-conviction motion less than
> thirty days later on November 9, 1998. (Doc.
> #36-2 at 20-25.) The Supreme Court of Florida
> affirmed the denial of this motion and issued
> its mandate on February 24, 2003. (Doc. #36-2
> at 52.)

Petitioner's Supplemental Response at 2-4 (emphasis added). Although this argument is not frivolous, the Court is compelled to find that the motion for rehearing or clarification filed in the Florida Supreme Court did not meet the criteria of 28 U.S.C. § 2244(d)(2) as a properly filed application for post conviction relief. See Howell v. Crosby, 415 F.3d at 1251 (petitioner's motion for an extension of time within which to file a petition for post conviction relief did not meet the criteria of § 2244(d)(2) as a properly filed application for post conviction relief). Therefore, the one-year limitation period was not tolled during the pendency of this motion.

Also, Petitioner's reliance on Case No. 93,845 is misplaced. Petitioner's Response at 2-3. In Case No. 93,845, the Supreme Court of Florida, on September 18, 1998, adopted a state rule

43

regarding the production of public records, which expressly provided that it was "applicable only to the production of public records for capital postconviction defendants and *does not change or alter the time periods* specified in Florida Rules of Criminal Procedure 3.850 and 3.851 . . . ." <u>Amendments to Florida Rules of Criminal Procedure - Rule 3.852 (Capital Postconviction Public Records Production) and Rule 3.993 (Related Forms)</u>, 723 So.2d 163 (Fla. 1998) (per curiam); Petitioner's Ex. A at 1 (quoting Rule 3.852(a)(1)) (emphasis added).

Furthermore, Petitioner contends that the time period should at least be tolled for the period from June 25, 1998, until October 1, 1998.   Petitioner's Response at 3.   The Supreme Court of Florida, in Case Nos. 92,026 and 82,322, on June 25, 1998, in a corrected opinion, tolled the time requirements set forth in Fla. R. Crim. P. 3.851 and 3.852 until October 1, 1998, for all defendants listed in appendix B, which included Petitioner Damren. <u>In Re Rule of Criminal Procedure 3.851 (Collateral Relief After Death Sentence Has Been Imposed) and Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence)</u>, 719 So.2d 869 (Fla. 1998); Petitioner's Ex. B; Ex. N.   While Respondents do not concede that Petitioner is entitled to tolling for this period of ninety-eight (98) days, they do note that this is the only period of time that Petitioner can arguably claim tolling.   Respondents' Reply at 5. Even assuming that Petitioner is entitled to tolling for this

44

period of time, the Petition is still untimely filed in this
Court.[18]

Petitioner also contends that he should be granted equitable
tolling for "at least, 90 days for the attempted filing of his
issues in the United States Supreme Court." Petitioner's Response
at 3; Petitioner's Supplemental Response at 8-9. After the Supreme
Court of Florida denied Petitioner's appeal of the denial of his
Rule 3.851 motion and denied his state habeas petition, Petitioner,
through counsel, "attempted" to file a petition for a writ of
certiorari in the Supreme Court of the United States; however, "the
Petition documents were mistakenly mailed to the Florida Supreme
Court a week before the due date and not the Clerk for the United
States Supreme Court." Petitioner's Response at 5. Petitioner
claims that, when the mistake was discovered, he "was assured by
the Clerk at the Florida Supreme Court that the Briefs would be
forwarded to the United States Supreme Court." Id. The Office of
the Clerk for the Supreme Court of the United States received the
petition for a writ of certiorari on April 25, 2003, which was two
(2) days late. Petitioner's Ex. E; Petitioner's Supplemental

---

[18] As noted by Respondents, even assuming that Petitioner is
entitled to this ninety-eight (98) days of tolling, the Petition is
untimely. Respondents' Reply at 5-6. The limitations period ran
for 200 days: 163 days (from January 13, 1998, until June 24,
1998) and another 37 days (October 2, 1998, until November 8,
1998). Therefore, Petitioner was required to file within 165 days
from February 25, 2003, or no later than August 8, 2003. However,
Petitioner filed his Petition in federal court on November 24,
2003.

Response, attached Exhibit A, Affidavit of Jefferson W. Morrow. Thus, the petition for a writ of certiorari was untimely, and Petitioner was notified that the Supreme Court of the United States "no longer has the power to review the petition." Petitioner's Ex. E.

Petitioner contends he is entitled to the benefit of the ninety-day time period to file a petition for certiorari with the Supreme Court of the United States.  However, Petitioner is not entitled to tolling for this period following the denial of collateral relief in the state courts.  Lawrence v. Florida, 421 F.3d at 1225 (adhering to and quoting Coates); Steed v. Head, 219 F.3d at 1300; Coates v. Byrd, 211 F.3d 1225, 1227 (11th Cir. 2000) ("[T]he time during which a petition for writ of certiorari is pending, or could have been filed, following the denial of collateral relief in the state courts, is not to be subtracted from the running of time for 28 U.S.C. § 2244(d)(1) statute of limitations purposes."), cert. denied, 531 U.S. 1166 (2001). Further, the fact that counsel for Petitioner "mistakenly mailed" the petition for a writ of certiorari to the Supreme Court of Florida rather than the Supreme Court of the United States does not allow Petitioner the benefit of equitable tolling.  Respondents' Reply at 6-7; Respondents' Supplemental Reply at 3-4.

As an additional equitable tolling argument, Petitioner's counsel states that he "was appointed to represent Mr. Damren on

46

October 12, 1998, and before 30 days had elapsed, he filed the [s]tate [h]abeas [petition], even though some of the items of his file had yet not been forwarded to [Petitioner's counsel] and that time without the file should not count against the Petitioner." Petitioner's Response at 3.  The record reflects that Petitioner's counsel (Jefferson W. Morrow, Esquire), on October 12, 1998, was appointed to represent Petitioner Damren in state court to pursue his post conviction claims.  Petitioner's Supplemental Response. And, as noted by Petitioner's counsel, although he did not possess all the files in Mr. Damren's case, he filed a Rule 3.851 motion on November 9, 1998.

While Petitioner's counsel does not state the exact time period for which he requests equitable tolling, it appears from the exhibits that he was given additional files in Mr. Damren's case on November 20, 1998.  Petitioner's Ex. C, Letter to Jefferson W. Morrow from the Office of the Capital Collateral Counsel, Northern Region of Florida, dated November 20, 1998.  Thus, Petitioner's counsel apparently is requesting equitable tolling from the date of his appointment on October 12, 1998, until November 20, 1998, when he received the additional files.  However, since Petitioner filed the Rule 3.851 motion (with a special request for leave to amend) on November 9, 1998, the federal one-year limitation period stopped running on November 9, 1998.  Therefore, the one-year period of

limitation was <u>not</u> running from November 9, 1998, until November 20, 1998 (the date he was given the additional files).

Petitioner's counsel, in the Rule 3.851 motion, requested leave to amend based on "the untenable predicament caused by the very recent appointment" of counsel. Ex. F.  The record reflects that Petitioner was granted leave to amend, and the circuit court, on June 20, 2001, denied his Amended 3.851 Motion to Vacate Judgment and Sentence. Ex. G.  As noted by the record, Petitioner was able to file a Rule 3.851 motion and request leave to amend. The mere fact that counsel did not have a complete file does not justify equitable tolling.  Thus, Petitioner is not entitled to equitable tolling for the period from October 12, 1998, until November 9, 1998, when he did not possess all of the files of Mr. Damren and when he was apparently preparing the Rule 3.851 motion.

Petitioner's concedes that if the one-year time period is not tolled during both the pendency of the Motion to Clarify (January 26, 1998, until June 25, 1998) and the ninety days in which Petitioner could have sought review in the Supreme Court of the United States of the denial of state court post conviction relief, then the Petition would be untimely under AEDPA.  Petitioner's Supplemental Response at 9-10.  Petitioner further contends, however, that "Petitioner exercised extreme diligence in trying to assert his right to file a habeas petition" and therefore "should receive the benefit of equitable tolling until Mr. Morrow finally

48

filed the petition in November." $\underline{Id}$. at 10.  In support of this argument, Petitioner has submitted an Affidavit by Mr. Morrow, stating in pertinent part:

> I am an attorney authorized to practice law in the State of Florida.  I am a member of the statewide registry of private attorneys qualified for capital collateral representation pursuant to 27.710, Florida Statutes.

> In my capacity as a registry attorney, I was appointed by the Florida Circuit Court in and for Duval County to represent Floyd Damren on October 12, 1998, in the postconviction collateral proceedings related to his conviction for first-degree murder and death sentence.  I have remained Mr. Damren's counsel since that time.

> Mr. Damren advised me that he wanted me to pursue all available means to challenge the imposition of the death penalty in his case, and I knew he was reying on me to timely seek such relief.

> I filed a motion for post-conviction relief in state court on Mr. [Damren's] behalf on November 9, 1998, which was denied on February 24, 2003.  I prepared a petition for writ of certiorari to the Supreme Court of the United States.  Through an administrative oversight, however, my office sent that to the Supreme Court of Florida, and it did not reach the Supreme Court of the United States until two days after the deadline had expired.

> I have no explanation as to why I did not file the [federal] habeas petition within the one-year time period other than I truly believed that we had plenty of time.  Nothing prevented me from filing it by April 30, 2003.

Petitioner's Supplemental Response, attached Exhibit A, Affidavit of Jefferson W. Morrow, dated May 15, 2006.

Counsel's filing of the initial petition in this Court on November 24, 2003, well after the due date of April 30, 2003 (or at the latest August 8, 2003) constitutes, at most, attorney error. The mere fact that Petitioner Damren advised Mr. Morrow to pursue all available means to challenge the imposition of the death penalty in his case does not negate the fact that Mr. Morrow had time to file a Petition within the federal one-year period of limitation, but failed to do so.[19]  Mr. Morrow candidly acknowledges that he has "no explanation" as to why he did not file the habeas petition within the federal one-year period of limitation other than that he "truly believed" that there was "plenty of time."  It is noteworthy that, after the Rule 3.851 proceedings had ended on February 24, 2003, Petitioner had sixty-five (65) days left to file the habeas corpus petition by April 30, 2003.  However, quite to the detriment of Petitioner Damren, Mr. Morrow failed to do timely file the Petition.

Petitioner respectfully argues that the Eleventh Circuit cases finding attorney negligence is not a basis for equitable tolling are "wrongly decided."  Petitioner's Supplemental Response at 12 (citation omitted).  This, of course, is not a question that this

---

[19] Moreover, Petitioner has not asserted that he is actually innocent.  See Wyzykowski v. Dep't of Corr., 226 F.3d at 1218-19.

Court can decide.  Instead, Petitioner requests this Court, "[f]or the sake of judicial economy," to "keep this matter under advisement until the Supreme Court decides *Lawrence*."  Id.  This Court cannot ignore binding Eleventh Circuit precedent.  Further, "because the State has a substantial interest in the finality of state criminal proceedings[,]" this Court must not stay or otherwise delay the proceedings to await a ruling by the Supreme Court of the United States in <u>Lawrence</u>.  See <u>Lawrence</u>, 421 F.3d at 1224 n.1.

Additionally, Petitioner cites to cases from other circuits (Second Circuit, Third Circuit and Ninth Circuit), contending that there may be exceptional or limited circumstances where attorney conduct can form the basis for equitable tolling.  Petitioner's Supplemental Response at 13-14, 16.  However, these cases are not controlling in this Circuit.  Furthermore, Mr. Morrow's actions and/or inactions did not involve any malfeasance.  Instead, Mr. Morrow's failure to timely file the federal habeas petition was based on his erroneous belief that he had "plenty of time" to file the petition:  "As we concluded in *Sandvik, Steed, and Helton v. Secretary for the Department of Corrections*, 259 F.3d 1310, 1313 (11th Cir. 2001), attorney negligence is not a basis for equitable tolling . . . ."  <u>Howell v. Crosby</u>, 415 F.3d at 1252.  In sum, equitable tolling will not be extended to these circumstances "because the ultimate failure to file within the statutory period

51

was a direct result of decisions made and actions taken by the petitioner or his attorney. Having created the situations that caused their petitions to be time-barred, those litigants could not then avail themselves of the equitable power of the district court." <u>Thompson v. Smith</u>, 173 Fed. Appx. at 733 (dicta).

Petitioner contends that "[t]here are unique features about capital collateral proceedings in Florida that militate even more strongly for the doctrine of equitable tolling." Petitioner's Supplemental Response at 14. He also notes that "[b]ecause these features are not recognized, much less addressed, in the Eleventh Circuit case law that counsel has uncovered, this aspect of the Petitioner's argument is an issue of first impression." <u>Id</u>. In Florida, there are Capital Collateral Regional Counsel and a statewide system of Registry attorneys in private practice who may be appointed to represent persons convicted and sentenced to death in postconviction collateral proceedings. <u>See</u> § 27.702(1), Fla. Stat.; § 27.710(1), Fla. Stat. Here, Mr. Morrow was appointed by the Florida courts as a Registry attorney on October 12, 1998.

The Eleventh Circuit has rejected this argument that is now asserted by Petitioner Damren.

> Lawrence contends that 28 U.S.C. § 2244(d)(1)(B) applies to his case because the State caused an impediment to his timely filing by providing him with an incompetent attorney through the Florida counsel registry system.
>
>                 . . . .

> Lawrence's assertion that the State impeded him from timely filing by providing an incompetent attorney to assist him after setting up a State registry system to monitor attorney performance, is meritless.  This is not the type of State impediment envisioned in § 2244(d)(1)(B).
>
> . . . .
>
> Making the most of a novel argument, Lawrence posits that the State's provision to him of an incompetent attorney justifies the imposition of equitable tolling.  This is not an extraordinary circumstance that warrants the application of equitable tolling.  Moreover, we have stated on numerous occasions that "attorney negligence is not a basis for equitable tolling, especially when the petitioner cannot establish his own diligence in ascertaining the federal filing deadline." *Howell v. Crosby*, 415 F.3d 1250, 1250 (11th Cir. 2005); *accord Helton v. Secretary for the Dep't of Corr.*, 259 F.3d 1310, 1313 (11th Cir. 2001); *Steed*, 219 F.3d at 1300; *Sandvik*, 177 F.3d at 1270.

<u>Lawrence v. Florida</u>, 421 F.3d at 1226 (footnote omitted).

To the extent that Petitioner Damren is arguing that he should be treated differently because he is under a sentence of death (<u>see</u> Petitioner's Supplemental Response at 13, 15, 17), that argument must fail.  Congress did not create an exception to the one-year limitation period under § 2244(d) for capital cases.

As a final matter, Petitioner argues that 28 U.S.C. § 2244(d) is unconstitutional, while recognizing that binding Eleventh Circuit precedent holds otherwise.[20]  Again, this Court must abide by binding Eleventh Circuit precedent.

Notwithstanding the Court's concerns expressed in the Preface to this opinion, supra, pp. 1-4, upon review of Petitioner Damren's arguments, this Court is of the opinion that Petitioner has not shown that he is entitled to the extraordinary relief of equitable tolling.[21]  For this reason, Mr. Damren's case, Case No. 3:03-cv-397-J-32, must be dismissed with prejudice as untimely filed.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   Petitioners' Request for Consolidated Oral Argument, filed July 5, 2006, is **DENIED.**

2.   Petitioners' Motion to Consolidate Records, filed July 5, 2006, construed as a Motion to Consolidate Cases, is **GRANTED** with respect to **Case Nos. 3:03-cv-237-J-32 (Thomas) and 3:03-cv-397-J-32 (Damren).**

3.   The Petitions in **Case Nos. 3:03-cv-237-J-32 and 3:03-CV-397-J-32** are **DISMISSED** with prejudice.

---

[20] Petitioner states that he has included this argument "solely for the purpose of preserving this point for potential appellate review."  Petitioner's Supplemental Response at 17.

[21] Any remaining arguments in support of finding that the one-year period of limitation should not be imposed upon him are found to be unpersuasive.

4.    The Clerk of the Court shall enter judgment dismissing the Petitions in **Case Nos. 3:03-cv-237-J-32 and 3:03-cv-397-J-32** with prejudice.

5.    The Clerk of the Court shall close **Case Nos. 3:03-cv-237-J-32 and 3:03-cv-397-J-32**.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

sc 9/25
c:
John S. Mills, Esquire
Jefferson M. Morrow, Esquire
Mary Catherine Bonner, Esquire
Dale G. Westling, Sr., Esquire
Curtis M. French, Ass't A.G.
Cassandra K. Dolgin, Ass't A.G.