UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FLOYD DAMREN,

          Petitioner,

vs.                                    Case No. 3:03-cv-397-J-32

WALTER A. MCNEIL,
et al.,

          Respondents.
_____

### ORDER

This is a capital case which is before this Court on a Petition for Writ of Habeas Corpus (hereinafter Petition). The Court previously dismissed the Petition due to untimeliness. Thomas [and Damren] v. McDonough, 452 F.Supp.2d 1203 (M.D. Fla. 2006). However, the Court later granted Petitioner's motion for rehearing and set the case for an evidentiary hearing on the issues of timeliness and equitable tolling. See Order (Doc. #86). On February 21, 2008, the Court conducted the evidentiary hearing, which focused on whether Petitioner's attorney's conduct in failing to file a timely Petition could provide a basis for equitable tolling. Post-hearing, following the Eleventh Circuit's decisions in Downs v. McNeil, 520 F.3d 1311 (11th Cir. 2008), and Holland v. Florida, 539 F.3d 1334 (11th Cir. 2008), the Court asked for

supplemental briefing on the equitable tolling issue in light of those decisions and the evidence adduced at the evidentiary hearing.

Although the transcript of the evidentiary hearing (Doc. #107) will speak for itself, the Court replicates Respondents' summary of the hearing, which the Court finds to be largely accurate:

> At the evidentiary hearing held by this Court regarding equitable tolling, Damren testified. (Hearing Feb. 21, 2008 at 166-171). Damren testified that Jeff Morrow was appointed to represent him as a registry attorney in the state postconviction proceedings. (T. 168-169). He did not have a choice in the appointment and could not hire his own attorney because he did not have the money to do so. (T. 169). Damren testified that he had no knowledge of when motions to set aside are due; he relied on his attorney to determine the due dates. (T. 170). He thought that Mr. Morrow was protecting his rights and "had it covered." (T. 170)[.]
>
> Original habeas counsel, Jeff Morrow, also testified. (Hearing Feb. 21, 2008 at 171-192). This Court relieved Mr. Morrow as counsel of record in this case prior to his testimony. (T. at 165). Mr. Morrow testified that he was appointed by a state circuit court judge in the Fourth Circuit to represent Damren. (T. 172). Mr. Morrow was "probably one of the only" registry attorneys in Jacksonville at the time. (T. 172). While Mr. Morrow had experience in criminal law, including capital appeals to the Florida Supreme Court, he had never handled a federal habeas case before. (T. 173-174; 183). There had been "a comedy of errors" regarding seeking certiorari review in the United States Supreme Court from the state postconviction proceedings, where the petition was sent to the wrong court, which resulted in the petition being late, which Mr. Morrow told Mr.

>     Damren about. (T. 175, 179). Mr. Morrow
>     thought that the time for filing the federal
>     habeas petition was tolled by seeking
>     certiorari review in the United States Supreme
>     Court from the state postconviction
>     proceedings. (T. 181).[1] Mr. Morrow thought
>     there was enough time to timely file. (T.
>     177). Mr. Morrow never told Damren a
>     particular date that the federal habeas
>     petition was due. (T. 182). Indeed, Mr.
>     Morrow never calculated an exact date. (T.
>     184). He was not sure whether the actual
>     petition that he filed on November 24, 2003
>     was timely or not. (T. 186). Mr. Morrow
>     admitted that he did not "understand federal
>     practice for a federal habeas." (T. 177;
>     183). Mr. Morrow informed Damren that he was
>     unfamiliar with federal habeas and would need
>     help. (T. 176; 182-183; 187). He was told
>     that Mark Olive, who was federally funded,
>     would help him but Olive did not return his
>     numerous phone calls. (T. 177; 181-182). Mr.
>     Morrow also attempted to get Bill Kent to help
>     him but did not call the federal Public
>     Defender. (T. 178-179; 182). Mr. Morrow
>     received "very confusing advice" on how to
>     calculate the federal deadline from those he
>     did talk with. (T. 184). He represented
>     Damren, even without the prior experience in
>     federal habeas, because "somebody had to."
>     (T. 178). Mr. Damren was a good easy client.
>     (T. 178).

Respondents' Supplemental Briefing Following Evidentiary Hearing (Doc. #124) at 8-9.

Here, in Mr. Morrow's own words is his explanation for his failure to file Damren's Petition on time:

---

[1] Cf. Coates v. Byrd, 211 F.3d 1225, 1227 (11th Cir. 2000) (per curiam) (Eleventh Circuit precedent finding the limitations period is not tolled during the pendency of a petition for writ of certiorari challenging a state court's denial of a motion for post conviction relief), cert. denied, 531 U.S. 1166 (2001).

> I thought I had enough time. I know that sounds stupid. But I thought I had -- I thought there was enough time.
>
> I have some explanations for it, in that every person I contacted said, [d]on't worry, Mark Olive will help you, because he's federally funded. And after 30 phone calls and no return phone call -- even to this day, I've never talked to Mark Olive, or received a letter from him -- I had no relief, or anyone trying to help me.
>
> Because I did not understand federal practice for the -- for a federal habeas. You can probably tell that by looking at the first motion I filed. So, I mean, that's my explanation.

Transcript of the Evidentiary Hearing (Doc. #107) at 177-78.

In Downs and Holland, the Eleventh Circuit has directly addressed the circumstances in which a petitioner will be entitled to equitable tolling based on the petitioner's attorney's conduct. In Holland, in affirming the dismissal of the petitioner's habeas petition as untimely, the Eleventh Circuit announced the following principle of law:

> [N]o allegation of lawyer negligence or of failure to meet a lawyer's standard of care - in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part - can rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling. Pure professional negligence is not enough.

Holland, 539 F.3d at 1339; see also Melson v. Allen, 548 F.3d 993, 1001 (11th Cir. 2008).

Applying the teachings of Downs and Holland to the facts of this case as developed at the evidentiary hearing, the conduct of Petitioner's counsel, while grossly negligent, does not meet the Eleventh Circuit's high standard for equitable tolling. In his supplemental brief, Petitioner's counsel concedes as much:

> Counsel is compelled out of his duty of candor to this Court to concede that he has been unable to fashion a good faith argument that Mr. Damren can satisfy the heavy burden established by Holland. Any fair and reasonable application of the doctrine of equitable tolling should apply to excuse his untimeliness. He reasonably relied on court-appointed counsel to preserve his rights, and he was not nearly sophisticated enough to understand how to follow up and check on his counsel to the extent Messrs. Asay and Thomas did.[2] Mr. Morrow's own testimony demonstrates that he provided woefully ineffective assistance of counsel. Especially in a capital case where life is literally at stake, this should be enough. But under binding Eleventh Circuit precedent it is not, and the Court is compelled to dismiss his petition.

Petitioner's Supplemental Brief Regarding *Downs v. McNeil* and *Holland v. Florida* (Doc. #123) at 6-7.

The Court agrees that it is compelled to dismiss this Petition as untimely. Before I do so, however, I make these points. Faced with a similar situation post-Holland, my colleague, Judge James S. Moody, Jr., "reluctantly" dismissed a capital habeas petition, finding that petitioner was "not entitled to equitable tolling of

---

[2] Messrs. Asay and Thomas are two other petitioners before this Court whose counsel failed to timely file their capital habeas petitions. Their cases will be decided by separate Orders.

5

the one-year limitation period." Whitfield v. McNeil, No. 8:07-cv-1823-T-30MAP, 2008 WL 4372850, at *6 (M.D. Fla. Sept. 24, 2008).[3] Judge Moody found that petitioner's "counsels' conduct was grossly negligent and a breach of Petitioner's statutory right to effective legal representation" (id.) and stated:

> If the Court were writing on a clean slate, it would find that counsels' breach of the statutory duty would support equitable tolling of the one-year limitation period. But this Court is constrained by Holland, a case involving similar facts to the instant case, from doing so.

Id. at *7.

The undersigned agrees with Judge Moody. Moreover, I have already expressed similar concerns in this case, 452 F.Supp.2d at 1205-08, and reiterate those concerns here. Finally, I note that I currently have before me three capital habeas petitioners, Damren, Asay and Thomas, all of whom were represented by lawyers who failed to timely file their federal habeas petitions. I conducted a joint evidentiary hearing for these three petitioners. In my estimation, this Petitioner, Damren, was the most trusting of his counsel and the least able to advocate on his own behalf. Yet it is partly because of Damren's failure to comprehend his own situation, understand the timing requirements and insist that his attorney do the most basic task of filing the petition on time that Damren finds himself disqualified from any consideration of

---

[3] This case is now on appeal.

equitable tolling.  Having added these caveats, I will finish by repeating what I said earlier in this case:

> I recognize the sound legal and policy reasons which underpin the Eleventh Circuit's decisions on [the equitable tolling/attorney negligence] issue and, even if I did not, I am no less bound by them.  Nevertheless, I would be remiss if I did not share my deep concern that in these cases our federal system of justice fell short in the very situation where the stakes could not be higher.

452 F.Supp.2d at 1207.

The Court now reinstates its original decision in Petitioner Damren's case (entered before rehearing was granted), which is published at 452 F.Supp.2d at 1218-29, and combines it with this Order to constitute the opinion of the Court on Damren's habeas Petition.

Therefore, it is now

**ORDERED AND ADJUDGED:**

Damren's Petition for Writ of Habeas Corpus (Doc. #12) is **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall enter judgment accordingly and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of January, 2009.

_____
TIMOTHY J. CORRIGAN
United States District Judge

sc 1/20
c:
John S. Mills, Esquire
Charmaine M. Millsaps, AAG
Stephen Richard White, AAG
Jefferson M. Morrow, Esquire